ROCHESTER, S. & E. R. CO. v. TOLEN et al.

(Supreme Court, Appellate Division, Fourth Department.    December 5, 1906.)

EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—COMMISSIONERS—BIAS—EVIDENCE.

Evidence held to show that a commissioner, in condemnation proceedings by a street railroad company, had represented the company in procuring rights of way, so as to disqualify him from acting as commissioner.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 581.]

Appeal from Special Term, Monroe County.

Condemnation proceedings by the Rochester, Syracuse & Eastern Railroad Company against Ellen Tolen and others. From a final order confirming the report of commissioners, defendants appeal. Reversed, and rehearing before new commissioners ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Frank J. Hone, for appellants.
William Nottingham, for respondent.

SPRING, J.    The respondent is a domestic street surface railroad corporation, duly organized for the purpose of constructing and operating a street surface railroad between the city of Rochester and the city of Syracuse. The defendants own a tract of land, containing about 21 acres, situated on East avenue, in the town of Brighton, and within 400 feet of the city line of Rochester. The respondent's proposed route passes through the lands of the appellants, and it commenced the usual proceeding under the condemnation law by petition to acquire the real property sought to be taken of these appellants. Their frontage on East avenue is nearly 1,100 feet, and, if the respondent's road is constructed as contemplated, it will pass through this tract about 400 feet back from East avenue, actually taking $1^4/_{10}$ acres of land, and leaving between East avenue and the railroad of the respondent about 10 acres, and about $9\frac{1}{4}$ acres to the rear of the railroad right of way. The plan contemplates the construction of an embankment for the bed of the railroad tracks of from $2\frac{1}{2}$ to 3 feet in height across the land of the appellants.

The commissioners awarded to the landowners the sum of $1,200. Two of the commissioners united in the report, and one of the commissioners, in a minority report, favored the payment of the sum of $3,875. Upon the hearing witnesses on behalf of the appellants testified that the value of the land actually taken was from $600 to $1,000 per acre, and the entire damage to the premises, by reason of the taking of the land and the construction and maintenance of the petitioner's road, was from about $4,500 to nearly $9,000, while the variation of the witnesses on behalf of the petitioner was from $300 to $600 as to the loss to be sustained by the appellants. We refer to this difference in the estimates for the purpose of emphasizing the significance of the cir-

101 N.Y.S.—28

cumstance upon which we base our reversal of the final order; for the commissioners might have awarded to the appellants a sum considerably in excess or much less than that awarded, and still have been within the range of the damages as fixed by the witnesses.

One of the commissioners joining in the majority report was Mr. Defendorf, who was a prominent man in the town of Brighton. Opposition was made to the confirmation of the report of the commissioners upon the ground that Mr. Defendorf was not an impartial commissioner. Affidavits were presented, showing that, while the petitioning respondent has been procuring rights of way through the town of Brighton, it has been represented by Mr. Defendorf. The evidence shows that in two instances he applied to landowners on behalf of the railroad company to procure rights of way for it. In one instance an option was obtained and renewed by Mr. Defendorf, and he paid for the continuance of such option, and eventually the purchase price agreed upon between him, on behalf of the railroad company, and the owner, was paid. In the affidavit of Mr. Hone, the attorney for the appellants, it is stated that he had ascertained that Mr. Defendorf, on behalf of the railroad corporation, had negotiated with a number of people to purchase rights of way, and gives as an excuse for not naming these people or presenting affidavits by them that he was unable to see them, but was advised that Mr. Defendorf—

"would not dispute or question his connection with the said company and his actions, as stated, in its behalf."

One of the parties with whom Mr. Defendorf negotiated was Mr. Deal, who states in his affidavit:

"That he knows the fact that said Defendorf acted for and on behalf of said railroad corporation in making application to the local authorities in Fairport for franchises or consents to build and operate said railroad in the streets of Fairport."

Mr. Schummers, who was also one of the persons who granted his right of way to the respondent at the instance of Mr. Defendorf, states that the latter—

"has been assisting the said corporation and its officers in obtaining rights of way and franchises for said railroad during said period of one year or more."

While an affidavit is presented by the secretary of the respondent that Mr. Defendorf has not represented the company, except in the two instances with Deal and Schummers, which was in the year 1902, yet there is no affidavit by Mr. Defendorf himself, who, above all others, possesses certain knowledge on this subject, gainsaying the affidavits used on the motion. We think, therefore, it is a fair deduction from the affidavits in the record that Mr. Defendorf, prior to his appointment as commissioner, had been acting as the representative and agent of the petitioner in procuring rights of way in the town of Brighton and along its proposed route. He was not, therefore, an unbiased commissioner. It does not necessarily follow from this statement that Mr. Defendorf's connection with the respondent in any respect influenced his decision; but a man acting in a judicial capacity should be free from the suspicion of partiality or bias. As was said by Judge Bronson 70

years ago, in People ex rel. Roe v. Suffolk C. P., 18 Wend. 550, at page 552:

"Next in importance to the duty in rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge."

See, also, Darling v. Pierce, 15 Hun, 542; Oakley v. Aspinwall, 3 N. Y. 547.

Taking into consideration the wide variance in the value put upon the loss to the appellants by the proposed appropriation of their land by the respondent and which is reflected in the two reports of the commissioners, it cannot be said that Mr. Defendorf may not, though unintentionally, have been influenced somewhat in his decision by his former relations with the railroad corporation. We assume that there was no dishonorable motive, and that he intended to deal honestly and fairly by these parties; but his relations with the company render him amenable to the criticism that he was not wholly unbiased. It is very important, in the administration of justice, that one performing the functions of judge or juror should be absolutely indifferent as between the parties; and, even though Mr. Defendorf's estimate of the damages is entirely correct, it is better that a rehearing be had than that the decision of the commissioners should remain in any degree open to the charge of partiality or favor.

The order should be reversed, and a rehearing had before new commissioners to be appointed at Special Term, with costs to the appellants to abide the event. So ordered.

Order reversed and report of commissioners set aside, and costs to the appellant to abide event, and new appraisal ordered before other commissioners to be appointed at Special Term. All concur.